1   defendant obtained a full and complete copy of the grand

2   jury transcripts and exhibits of the proceedings

3   completed on June 29th, 2017, in this case of *State of*

4   *Arizona vs. Roger Wilson* in the Cochise County Superior

5   Court Case CR 2017 516 and that the defendant,

6   Mr. Morgan, did receive those from formal legal counsel

7   to defendant, Roger Wilson, and that legal counsel is

8   Mr. Wilkison.

9              The County further alleges that the

10  defendant knew that the grand jury materials are legally

11  required to be maintained as confidential.  It further

12  alleges that the defendant caused the full and complete

13  transcript to be publicized by posting hyperlinks to the

14  transcript on his Facebook page referred to previously.

15  The defendant has republished the transcript several

16  times since he first published the protected materials on

17  October 8th, 2017.

18             The County further alleges that the

19  defendant was at all times aware that the laws

20  prohibiting his conduct -- was aware of the laws

21  prohibiting his conduct and that he willfully disregarded

22  those laws.

23             The County further alleges that Mr.

24  Morgan's conduct is interfering with the plaintiff's

25  protectable interest in enforcing the laws of the state

1   of Arizona, and he is further causing actual harms,

2   including tainting the potential jury pool related to the

3   Wilson case, which is active and ongoing.

4           And the County alleges that although it may

5   prosecute Mr. Morgan for his misdemeanor offense or

6   offenses, but that the prosecution will not and cannot

7   compel the removal of the protected materials from the

8   public sphere and that the County has no other adequate

9   remedy.

10          The County seeks the following relief:

11  That Mr. Morgan remove any hyperlink depiction,

12  photograph or other means of publication of the grand

13  jury transcripts and all exhibits thereto.  This includes

14  the photograph of the victim that was dated June 29th,

15  2017, in the case of State of Arizona vs. Roger Wilson

16  and that he remove those materials from any and all

17  Internet sites over which he and anyone acting under his

18  control -- that he remove those materials from any and

19  all Internet sites over which he or anyone who is working

20  for him has control.

21          The County asks that the hyperlink

22  depiction of the photograph and other means of

23  publication concerning the motion for remand, including

24  its exhibits, that was dated October 6th, 2017, in the

25  Wilson case be removed from any and all Internet sites

1  over which the defendant or anyone acting by or for him

2  has control.

3            The County asks that the Court ensure that

4  the grand jury transcripts and all the exhibits attached

5  thereto in the *Wilson* case and in the motion for remand,

6  including the exhibits in the motion for remand, are not

7  be publicized to any third parties by any other means and

8  enter an order to that effect against Mr. Morgan, and

9  Mr. Morgan return the original and any copies of the

10  grand jury transcript and all the exhibits attached

11  thereto and the motion for remand in his possession,

12  including those originals or copies he has or anyone who

13  is acting on his behalf or within his control return

14  those within 24 hours of the Court's order.

15            The defendant admits number one.  He admits

16  that he did write the news article for the CCR in October

17  2017 and did publish that news story on October 8th,

18  2017, in a local news discussion that he moderates on his

19  Facebook for Cochise County Courts.

20            He admits that the October 2017 news story

21  included excerpts of the grand jury transcripts along

22  with hyperlinks for readers to view the full motion to

23  remand and the full transcript of the grand jury

24  proceedings; that that included the grand jury list and

25  photographs that were part of that transcript; and he

1    made those materials available to people -- to the public

2    over his server.

3                    He admits receiving and responding to

4    County Attorney McIntyre's e-mail request to modify the

5    news account and to remove the links to the grand jury

6    transcript so that it was not available to the public.

7    The defendant, Morgan, admits becoming aware that Judge

8    Conlogue executed an ex parte order sealing the motion to

9    remand after it had been in the public file for ten days.

10                   The defendant not removing or significantly

11   altering the news story or its links and the document

12   images posted to his Facebook account on October 8th.

13                   He admits making a public records request

14   by filing the same with the clerk to the Cochise County

15   Board.  And he admits that by publishing the subject news

16   account -- excuse me -- he denies that by publishing the

17   subject news account and related documents that he has

18   caused any demonstrable harm to the plaintiff.

19                   He also admits that he communicated to

20   County Attorney McIntyre that he would not alter the news

21   story pursuant to County McIntyre's (sic) request and

22   would not comply with County McIntyre's request to halt

23   public access to the court documents and believes the

24   same, that he believed that he had broken no law.

25                   The Court finds -- make the findings as to

1   the admissions that the defendant has made that I just
2   recited in the record.  Those are the findings of the
3   Court.  Based upon those admissions, the Court finds as
4   I've said, that Mr. Morgan received what we're referring
5   to as protected materials and that he received those from
6   Attorney Wilkison and that he also received the motion to
7   remand, which had been for a brief time publicly filed by
8   the Court and that the source of the protected
9   materials -- the sources of the protected materials from
10  whom -- or from which Mr. Morgan got those materials.

11          The Court further finds that, putting aside
12  the sealing order of Judge Conlogue from October 16th,
13  2017, there are no court orders that restrict the use of
14  the grand jury information in this case.  There is no
15  practice -- in this county, at least, and perhaps many
16  others, but before the Court, there are no court orders
17  that restricted the use of the grand jury information in
18  this case.

19          The prosecutor's office has no written
20  documented agreements with defense counsel.  When the
21  prosecutor's office turns over grand jury material, I
22  guess they turn it over indirectly.  But there are no
23  documented agreements prior to between defense counsel
24  and County Attorney with respect to grand jury materials
25  to which defense counsel get access.

1          I don't -- I don't find that the statute

2    concerning A.R.S. 13-2812, which refers to persons --

3    which makes exceptions for disclosure to persons who are

4    engaged in the proper discharge of their official duties,

5    I don't read the statute to cover defense counsel in

6    connection with that statute.  I don't -- the statute

7    makes an exception for the disclosure of grand jury

8    information for persons in the proper discharge of their

9    official duties.  I can't read this statute to make a

10   defense -- a private defense attorney someone who is in

11   the discharge of their official duties.  I think the

12   common interpretation of an official duty involves

13   someone who is a public official, someone who was either

14   the clerk of the court, obviously a prosecutor.  It could

15   include a court reporter, obviously, who is usually sworn

16   and made part of the official proceedings.

17          But I want to note for the record that I

18   don't -- and I think it's important that the common use

19   of the term "official duties" I don't believe covers a

20   private defense attorney who is engaged in a defense,

21   whether it's by court appointed or otherwise of a

22   criminal defendant.

23          Injunctive relief.  The Court references

24   the statute Arizona Revised Statute 12-1801.  "Judges of

25   the Superior Court may grant writs of injunction when it

1  appears that the party applying for the writ is entitled

2  to the relief demanded, and such relief or any part

3  thereof requires the restraint of some act prejudicial to

4  the applicant."

5          The applicable, I think, standard which

6  everyone agrees upon is cited at numerous places in

7  Arizona law, but *T.P. Racing vs. Simms,* 232 Ariz. 489 at

8  495 Court of Appeals 2013 is a recent statement of the

9  law.

10          I don't think there is any disagreement

11  about this.  The party seeking a preliminary injunction

12  must show a strong likelihood of success on the merits,

13  possibility of irreparable injury if the injunction is

14  not granted, the balance of hardship swaying in his favor

15  of public policy favoring the requested relief.  And the

16  critical factor is relative hardship for which the movant

17  must show either, one, probable success on the merits and

18  the possibility of irreparable injury or, two, the

19  presence of serious questions in the balance of hardships

20  tipping in his favor.

21          So the County relies upon, as we've

22  discussed at length, A.R.S. 13-2812.  And we've reviewed

23  that language at length, which is a criminal statute,

24  making unlawful grand jury disclosure under the terms of

25  that statute a Class 1 misdemeanor.  There is no question

1  but that -- and I think Mr. McIntyre articulated this
2  very well, probably better than the case law does.  There
3  is no question but that a prosecuting agency has a
4  legitimate and protectable interest in maintaining grand
5  jury secrecy and confidentiality.  And those protected
6  items are matters -- are things that are under the
7  statute attending to the grand jury, and the Court
8  consulted *Samaritan Health System vs. Superior Court.*
9  That is 182 Ariz. 219 at 221.  It's the Court of Appeals
10  1994.

11          They talk about -- there about the public
12  policy reasons for grand jury confidentiality, and they
13  list a number of the reasons therefor.  But there is no
14  question that grand juries can't do their work if they
15  don't operate in secret.  They're investigating bodies.

16          As Mr. McIntyre said, they may discuss and
17  investigate persons who are later found for which there
18  is no probable cause for a charge.  They need --
19  witnesses need to be able to appear and know that the
20  persons who are participating on behalf of the State or
21  the prosecuting agency and the grand jurors, that they
22  are going to keep matters secret.  Investigations have to
23  occur sometimes in secret.  And it protects witnesses.
24  It protects targets.  It encourages prospective witnesses
25  to come forward.  And they have to.  It has to occur in

1   secret.

2   And there is a long-established,

3   recognizable, legitimate, and protectable interest, as

4   was very well articulated by Mr. McIntyre, in maintaining

5   grand jury secrecy.  I also want to state for the record

6   that the Court found Mr. McIntyre's testimony to be very

7   thoughtful and measured as to his role and

8   responsibilities as a -- and why he is motivated to bring

9   this action as he did.

10   Applying the factor test that applies to

11   the issuance of the injunction under *T P. Racing*, the

12   Court finds that Mr. Morgan obtained -- I mean Mr. Morgan

13   obtained the grand jury information -- that he obtained

14   the grand jury information without breaking the law.

15   What he did with it, we'll talk about in a second.  But

16   Mr. Wilkison got the grand jury information as a matter

17   of course, and also Mr. Morgan got some of it, anyway,

18   from a motion to remand that was, for at least some brief

19   period of time, part of the public record.  And so he

20   obtained -- Mr. Wilkison gave it to him.

21   If Mr. Wilkison gave it to Mr. Morgan

22   believing that Mr. Morgan was just going to give it to

23   Mr. Wilson, but Mr. Morgan took it and opened it and used

24   it anyway, I don't see that as a -- that reflects on what

25   Mr. Wilkison thought.  But as I was discussing with

1   counsel, I mean, Mr. Morgan could have done what

2   Mr. Wilkison thought and given it to Mr. Wilson, and then

3   Mr. Wilson could have turned it over to Mr. Morgan, or

4   his mother could have turned it over to him.

5          So I don't -- and as I said, defining as I

6   did before, I don't find that statute can be read to

7   include a defense attorney such as Mr. Wilkison as

8   prohibiting his disclosure of grand jury information in

9   this case, you know, to Mr. Morgan as a violation of the

10  statute because I don't think he is someone who is

11  covered under the statute as someone who is accepted in

12  the proper discharge of official duties.

13         I don't think he is an official who has

14  duties pursuant to statute.  But, anyway, Mr. Morgan got

15  the material without breaking any law.  The statute

16  prohibits and makes it a crime to knowingly disclose.  So

17  he got it legally.  I mean, somebody gave it to him

18  without breaking the law.  Mr. Wilkison had it legally.

19  Mr. Wilkison I think legally gave it to Mr. Morgan.

20  Mr. Wilkison could have given it to Mr. Wilson.

21  Mr. Morgan could have given it to Ms. Wilson's mother.

22  They could have given it to Mr. Morgan, and he obtained

23  it legally.

24         The problem with the statute that I was

25  discussing with plaintiff's counsel is that -- the

1  problem with the statute is, as the State -- the County
2  is interpreting it, is the reach of that statute is --
3  under that interpretation is so broad that it would on
4  its face, with that interpretation, reach a substantial
5  amount of constitutionally protected conduct and speech.
6  And I think that application is overbroad.
7  I don't find the statute to be or hold the statute to be
8  unconstitutional.  I don't have to reach that for
9  purposes of ruling on a preliminary injunction request.
10  But when you have a penal statute that can be interpreted
11  the way the County is seeking to interpret it, the net is
12  cast to, I mean, a pool of persons that is just too
13  large.  So, you know, let's say there's -- we were
14  discussing 10,000 or 100,000 persons who now have this
15  information about the grand jury, and if they're all
16  aware of what this statute says, then you've got 100,000
17  possible violators of the law.
18  In the *State vs. Steiger*, 162 Ariz. 138 at
19  141-42 in 1989 -- it's an appellate court decision from
20  the State of Arizona -- the Court said it is "basic to
21  our constitutional society is the concept that
22  governmental powers should be properly restrained so that
23  individual freedom can be reasonably exercised."
24  "Penal statutes must be precise enough to
25  clearly define the limits of that power."

1          "A penal statute is vague if it fails to
2     give persons of average intelligence reasonable notice of
3     what behavior is prohibited or is drafted in such a
4     manner that it permits arbitrary and discriminatory
5     enforcement."

6          "The basic premise that penal statutes
7     defining a criminal offense must not only be definite,
8     but also not encourage arbitrary and discriminatory
9     enforcement."

10         And it references the Supreme Court case of
11    *Kolender vs. Lawson*, and it says, "Although the doctrine
12    (void for vagueness) focuses both on the actual notice to
13    citizens and arbitrary enforcement, we have recognized
14    recently that the more important aspect of the 'vagueness
15    doctrine' is not actual notice, but the other principal
16    element of the doctrine." And this is "the requirement
17    that a legislature establish minimum guidelines to govern
18    law enforcement. Where the legislature fails to provide
19    such minimal guidelines, a criminal statute may permit a
20    'standardless sweep [that] allows policeman, prosecutors,
21    and juries to pursue their personal predilections.'"

22         I'm not finding that that is what happened
23    in this case. I'm not making findings that the County
24    Attorney here is cherry-picking Mr. Morgan and is
25    engaging in some kind of vendetta against him for what he

1    is writing, but the problem is -- this is the problem

2    with the statute, is it's so -- that interpretation is so

3    broad that it would allow that.

4                     I mean, if there is potentially 100,000

5    people out there who now are now in possession of this

6    information and meet the plain language of the statute,

7    consistent with the interpretation of the State, you've

8    got, you know, 10,000, 100,000 persons who are subject to

9    arbitrary and discriminatory enforcement.  And it doesn't

10   give -- it's too vague to give actual notice to the

11   common -- an average citizen of average intelligence

12   about the scope of its coverage.

13                     Overlaying that analysis is also the First

14   Amendment, and it's a speech that is protected speech.

15   So when I find that Mr. Morgan committed no crime in

16   obtaining the information.  You've got it legally from

17   Mr. Wilson by committing no crime, he got it from a

18   publicly filed document with the clerk of the court; that

19   is not a crime.  And then he wrote about it and

20   disseminated it.  And that is First Amendment speech.

21   *Gentile*, G-E-N-T-I-L-E, *vs. State Bar of Nevada*, 501 U.S.

22   1030, 1991, says that "there is no question that speech

23   critical of the exercise of the State's power lies at the

24   very center of the First Amendment."

25                     "Dissemination of information relating to

1  alleged governmental misconduct, which only last term we

2  described" -- which is described as "speech which has

3  traditionally been recognized as lying at the core of the

4  First Amendment."

5              And the case went on to say -- I think this

6  is Justice Kennedy -- "The judicial system, and in

7  particular our criminal justice courts, play a vital part

8  in a democratic state, and the public has a legitimate

9  interest in their operations."

10             "It would be difficult to single out any

11 aspect of government of higher concern and importance to

12 people than the manner in which criminal trials are

13 conducted."

14             "Public vigilance serves us well, for 'the

15 knowledge that every criminal trial is subject to

16 contemporaneous review in the forum of public opinion is

17 an effective restraint on possible abuse of judicial

18 power... Without publicity, all other checks are

19 insufficient; in comparison of publicity, all other

20 checks are of small account."

21             Obviously, this is not coverage of a

22 criminal trial.  This is coverage of grand jury

23 proceedings, which there is a layer of greater concern

24 because of what I've said.  They have to be pursued to

25 secrecy.  But nonetheless, this is the core of First

1    Amendment speech, is Mr. Morgan's right to analyze,
2    critique, commend, criticize what he believes or maybe
3    believed to have been governmental misconduct, be it in
4    the grand jury or in a trial.

5    This is no commentary by the Court on
6    whether or not there was any kind of prosecutorial
7    misconduct or anything.  That is not even before me, and
8    I don't even have information to make a comment.  If I
9    would, I wouldn't.  There's nothing I'm saying here
10   should be any commentary by me on the merits or the
11   validity of Mr. Morgan's commentary about the case.

12   So you know the *Gentile* case talks more
13   about the importance of court nature, central nature of
14   First Amendment speech in connection with prosecutorial
15   activities and prosecutorial discretion.  It says, "Our
16   system grants prosecutors vast discretion at all stages
17   of the criminal process.  The public has an interest in
18   its responsible exercise."

19   Again, I'm not making any kind of
20   commentary about that that happened in this case.  I have
21   no basis to say that.  But where an individual who is a
22   member of the press in the Internet age legally obtains
23   documents through no violation of the law and
24   disseminates them -- in that's whether it's critical or
25   not of what happened -- that's at the core of First

1   Amendment speech.  And to read the statute to include the
2   basis for the Court to enter a prohibition and the
3   removal of speech by Mr. Morgan would encompass not only
4   Mr. Morgan but anyone who received Mr. Morgan's
5   information, protected information, 10,000 persons,
6   anyone who got it from Mr. Tim Steller, from the reporter
7   who got it from Mr. Morgan, and all those thousands of
8   people.  All those people obtained it legally, and
9   they're subject to -- well, I can't read this law as to
10  require that all citizens who come into possession of
11  this grand jury information and come into it legally, I
12  can't read a requirement in there that they have to
13  obtain a court order before they disseminate it or risk
14  being in violation -- criminal violation of the law.

15              I mean, you know, to read the law the
16  County's way, I would have to read the law to require any
17  citizen who comes into legal possession of this
18  information, who comes into possession of this
19  information from any source, as having to obtain a court
20  order in order to disseminate it or risk being subject to
21  criminal prosecution.  And I can't read it that way and
22  still read that it's -- or find that it's a
23  constitutional law.

24              So I don't think there is a strong
25  likelihood that the County -- that the plaintiff will

1   succeed on the merits, given my factual findings and my

2   reading of the law.

3               In terms of irreparable injury, I mean, for

4   better or for worse, it's out there, and it is out there

5   en masse.  That toothpaste is out of the tube, and

6   there's no way to claw it back.

7               In terms of the ability to pick a jury and

8   have a fair trial, yeah, it's going to be much more

9   problematic than it would have been had this information

10  not been disseminated, but the courts pick juries all the

11  time and in cases for which there is substantial amount

12  of publicity and high-profile cases.  And it can be tough

13  and it can take awhile, but it can be done.

14              But the real concern -- the real concern

15  here -- and I don't want to close without saying it --

16  is, as I have said, there is an injury to the integrity

17  of the grand jury secrecy that did occur here.  And also,

18  obviously very concerned about the effect on the victims

19  or -- the "victims" being the survivors of the

20  deceased -- who saw that photograph for the first time,

21  as I understand the testimony, on the Internet.  And that

22  certainly, you know, is very troublesome.  I don't mean

23  to make light of that.  And.

24              I have noted that the grand jury does have

25  to operate in secrecy and confidentiality.  It's

1    critical.  And the County Attorney did articulate those

2    needs very -- with great measure and very thoughtful.

3    And there was harm to the victims in this case by virtue

4    of that publication.  But I can't read the statute, at

5    least for purposes of issuing a preliminary injunction,

6    to include Mr. Morgan's conduct in this case.

7                So I'm going to deny the request for a

8    preliminary injunction with respect to the County's

9    requested relief as I've outlined at the beginning of my

10   ruling.

11               In terms of the -- well, let me step back a

12   second.  You know, the grand jury -- maintaining the

13   integrity of the grand jury secrecy and confidentiality

14   in terms of forward looking, because that is a concern

15   that you have to have and as prosecutors you have in

16   terms of looking forward instead of backwards and trying

17   to undo or unring the bell and putting the toothpaste

18   back in the tube.  I don't see that a preliminary

19   injunction or injunctive relief is necessary because I

20   think there are other steps that the County can take in

21   the future to plug that hole in the chicken coop that

22   Mr. McIntyre referenced.

23               You do have a hole in the chicken coop.

24   And you discovered it in a hard way.  But that happens.

25   That happens, but -- and the state law and statutes don't

1    have the kind of protections and rules that other states

2    have.  I know the federal courts have -- the federal

3    courts have rules of secrecy.  But I also note, for

4    example, that federal courts have -- federal prosecutors'

5    offices have agreements that they make defense counsel

6    execute before they receive disclosure and grand jury

7    material and limit -- there are agreements that defense

8    attorneys have to enter into with prosecutors to try

9    to -- that work to avoid these kind of problems in the

10   future.

11                   And I'm sure you're looking into that.  You

12   are a responsible person.  But it's relevant.  I'm not

13   here to advise you how to run your office.  I --

14   that's -- that's not my purpose.  But the point being,

15   for purposes of looking forward for injunctive purposes

16   to prevent future harms of this type in this case or in

17   other cases, there are other measures that can be taken

18   to fill -- to close that hole in the chicken coop, and

19   that's the only reason I bring that up.

20                   In terms of the public records request,

21   I -- there is a -- you know, the statute has been

22   referenced by the County as A.R.S. 39-121.01, and it

23   establishes a statutory scheme for a public records

24   request.  And under Subsection (d)(2), you know, it says,

25   "If requested, the custodian of the records of an agency

1    shall also furnish an index of records or categories of
2    records that have been withheld and the reasons the
3    records or categories of records have been withheld from
4    the requesting person."

5                 And I'll take it as a representation that
6    that has been done so.  Mr. Morgan has made a request.
7    If the County hasn't responded formally, or even if it
8    has and denied it, then the next step is the person who
9    has been denied the request or for whom the request has
10   not been responded to has got to bring an action to the
11   Court.  And that hasn't happened.  I don't think the
12   issue is ripe for the Court's review.

13                 I understand the problem that you raised,
14   Ms. Ransom, that this is -- there's potential attorney's
15   fees if the Court -- an action is later brought, and the
16   Court finds that somebody was denied a public records
17   improperly or there was delay.  I get that.  And maybe
18   that's a problem with the law.

19                 But I don't -- but I can't cure the problem
20   with the law by giving what I think are advisory opinions
21   about whether or not those -- those documents should have
22   been disclosed.  I've got some pretty strong opinions
23   about whether or not you were right about that or not
24   and -- well, I'm going to leave it at that.

25                 I think the request was made.  If it was

1    responded to, that it is up to Mr. Morgan, if he doesn't

2    like the response, to do something about it, and he

3    hasn't.  So unless and until he does, I don't think that

4    that issue is before the Court.

5                So that's the ruling of the Court.

6                Now, again, I want to -- you did an

7    excellent job.  I'm very impressed of how well you

8    presented your case and your arguments and the thorough

9    research and pleadings.

10               Mr. Morgan, for someone who is a nonlawyer,

11   you handled yourself very well and made your arguments

12   well, especially for a nonlawyer.

13               As I have said, Mr. McIntyre presented

14   himself in a very measured and thoughtful way.  And he's

15   got a job to do.  And I know you brought this action

16   because you take responsibilities very seriously, and it

17   is a serious matter.  Grand jury secrecy is and victims'

18   rights are very serious.  And this is obviously a very

19   serious case for your office.  So I want to commend all

20   of you for your work in making my job easier to that

21   extent also.

22               But I've denied the preliminary injunction,

23   so I guess you can determine, discuss amongst yourself in

24   your office, if you want to actually ask for a trial on

25   the merits or what you want to do next.  But you don't

1    have to make that decision right now.

2                    All right.  Anything further, Mr. Morgan?

3                    MR. MORGAN:  No.  Thank you, Your Honor.

4                    THE COURT:  Thank you.  We'll be in recess.

5                    (Proceeding concluded at 4:40 p.m.)

6                         *     *     *

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## CERTIFICATE

I, HILARY ZIVE, CR, a Certified Reporter in the State of Arizona, do hereby certify that the foregoing 227 pages constitute a full, true and accurate transcript of the proceedings had in the foregoing matter, all done to the best of my skill and ability.

SIGNED and dated this 8th day of March, 2018.

HILARY ZIVE, CR
Certified Reporter
Certificate No. 50729

REVOLUTIONARY TEXT
ARIZONA CERTIFIED FIRM NO. R1110