David M Morgan, Publisher
<u>The Cochise County Record</u>
10 Quality Hill
PO Box 1218
Bisbee Arizona 85603
editor.SVDR@gmail.com
520 236-4051

# UNITED STATES DISTRICT COURT
# DISTRICT OF ARIZONA

| | |
|---|---|
| DAVID M MORGAN,<br><br>Plaintiff,<br><br>vs<br><br>BRIAN McINTYRE, COCHISE COUNTY, COCHISE COUNTY BOARD OF SUPERVISORS, SARA RANSOM, LORI ZUCCO, MARK DANNELS, KEN BRADSHAW, ARIEL MONGE, TODD BORQUEZ, CAROL CAPAS, MARY ELLEN SUAREZ-DUNLAP, AMY HUNLEY, JANE and/or JOHN DOES, PAT CALL, ANN ENGLISH, and PEGGY JUDD.<br><br>Defendants. | Case No. 4:19-cv-00571-DCB<br><br>RESPONSE TO STATE DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT<br><br>and<br><br>MOTION FOR LEAVE TO AMEND<br><br><br>THE HON. DAVID C BURY |

1

2    **COMES NOW Plaintiff**, pro se, and responds to State Defen-

3    dants' Motion to Dismiss as follows:

4

5

6

1                                    1

**STANDARD OF REVIEW**

A motion to dismiss for failure to state a claim is disfavored, especially when a citizen asserts civil rights claims, the Court construing the allegations against the movant, and taking all inferences in favor of the plaintiff. McGlone v. Bell, 681 F.3d 781, 718, 727 (6th Cir. 2012);  Harris v. Am. Postal Workers Union, 198 F.3d 245 (6th Cir. 1999).

Thus, when an inference of wrongdoing is sufficiently discernable from the allegations, it is to be left to the operation of the liberal discovery rules to define the facts and dispose of unmeritorious claims. Swierkiewicz v. Sorema N.A., 534 U.S. 506, 512 (2002).

The Ninth Circuit teaches that the Court must use "extreme liberality" in considering a Motion to Dismiss before the plaintiff has had the opportunity to prove up the allegations with evidence. Morongo Band of Mission Indians v. Rose, 893 F.2d 1074, 1079 (9th Cir. 1990).

As the United States Supreme Court has made clear:
> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome, and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.

> The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action." Rule 1.
>
> Foman v. Davis, 371 U.S. 178, 181-82 (1962)

In light of Rule 8(a)(2)'s language that a claimant need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief," the Court, in Erickson v. Pardus, 551 U.S. 89, 93 (2007) reiterated that a plaintiff is not required to plead specific facts; instead, the statement need only "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests'" ((quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)) (emphasis added); Moss v. U.S. Secret Service, 572 F.3d 962, 968 (9th Cir. 2009) (quoting Erickson, 551 U.S. at 93).

Thus, "Rule 8(a) establishes a pleading standard without regard to whether a claim will succeed on the merits. Indeed, it may appear on the face of the pleadings that a recovery is very remote and unlikely but that is not the test." Swierkiewicz, supra, 534 U.S. at 514-15 (emphasis added).

As distilled by the Ninth Circuit in Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011), "[T]he factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be

subjected to the expense of discovery and continued litigation." (emphasis added). Cafasso, U.S. ex rel. v. General Dynamics C4 Systems, Inc., 637 F.3d 1047, 1055 (9th Cir. 2011) (plausibility standard does not require "the who, what, when, where, and how of the misconduct alleged."); In re Mortgage Electronic Registration Systems, Inc., 754 F.3d 772, 783-84 (9th Cir. 2014).

"The Twombly plausibility standard . . . does not prevent a plaintiff from pleading facts alleged upon information and belief where the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." Arista, Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)

Thus, "[b]ecause many of the relevant facts here are known only to the defendant, and in light of the additional facts alleged by Park, we conclude that she has pleaded sufficient facts to state a plausible claim for civil conspiracy under Section 1983." Park v. Thompson, 851 F.3d 910, 928-29 (9th Cir. 2017).

Pleading doesn't mean having to present proof. The Ninth Circuit has repeatedly held that allegations made of actions taken by state actors of which the plaintiff has no direct knowledge satisfy Rule 8(a). OSU Student Alliance v. Ray, 699 F.3d

1053, 1058 (9th Cir. 2013) (complaint in which plaintiff lacked identities of certain actors who devised policy not insufficient given allegations against director who allegedly enforced it). In sum, the Ninth Circuit has stated that "Iqbal demands more of plaintiffs than bare notice pleading, … but it does not require us to flyspeck complaints looking for any gap in the facts" Lacey v. Maricopa County, 693 F. 3d 896, 924 (9th Cir. 2012).

**MORE FACTS ABOUT PLAINTIFF'S CLAIMS**

In 2006 Plaintiff complained directly, in person, to then-Clerk of the Superior Court for Cochise County Denise Lundin about problems of access to court documents.  After he pointed out Arizona statutes and Arizona Supreme Court rules governing access to court documents, the elected Superior Court Clerk said,

> "I know the law, Mr Morgan, I'm just not comfortable with you having all that information".

That proprietary attitude, or defensiveness, in the Clerk's Office probably didn't start with Clerk Lundin. It certainly continued after she lost the 2010 election to a former Clerk's Office employee, Mary Ellen Suarez-Dunlap.

Suarez-Dunlap had worked in the local courts from 1986-2003 and learned well the "Cochise County way" of doing things.

Until 2017, the single "public access" computer to Cochise County Superior Court's case information and document image storage system was behind an unmarked locked door inside the Clerk's facilities in the main county courthouse. It worked perhaps 75% of the time.

And, this sole public computer was in the Bisbee court facility (not in Cochise County's largest city, Sierra Vista, where Plaintiff resided until early 2016).

A drive from Sierra Vista to Bisbee is more than an hour round-trip. From other parts of the 6,200 square-mile county, such a trip could be 3 or more hours. Until 3 years ago, there was no inter-city bus service in Cochise County and so persons without vehicles, like Plaintiff, faced very significant impediments in just getting to the public access computer and could not know with any certainty that it would be functional when they arrived.

In 2017, the sole public access computer was moved to a more public space in a nearby building where users were asked to make entries in a manual "log in" sheet with their names, in/out times and purpose. Users, including Plaintiff, then had a bit better access to the computer itself but the functionality problems didn't improve.

1  Off-premise public access (via the Internet) to Cochise County
2  Superior Court case file documents was not available until
3  mid-2019 when the Arizona Supreme Court's Administrative
4  Office of the Courts (AOC) began providing limited on-line ac-
5  cess to limited case file documents from most Superior Courts
6  in Arizona.
7
8  At $4 per document, the newish state-run system rate for on-
9  line access to those court case file documents evidently tries
10 to approximate the 50 cents per page that the Arizona legisla-
11 ture authorizes - and requires (A.R.S. 12-284) - the Clerks of
12 the Superior Court to charge for printing and providing copies.
13 Plaintiff could avoid significant costs, hundreds of dollars a
14 month, and review many more cases and documents when
15 access to view and read documents was available via the pub-
16 lic access computer.
17
18 For a number of years - particularly since 2016 when he relo-
19 cated from Sierra Vista to a property in Bisbee just 100 ft from
20 the doors of the courthouse - Plaintiff was by far the most fre-
21 quent user of the public access computer. (see Exhibit – Pub-
22 lic Access Computer Use Log).
23
24 On the many occasions when Plaintiff reported to the Clerk's
25 staff that the public access system wasn't working, or wasn't
26 fully functional, "repairs" or restoral of service would take hour
27 or days and the blame for delays was shifted to "problems at

the AOC" which provided some system access and tech support to the Clerk's Office. For several years (2015-2018) a sole Clerk's Office employee, Marta Rivera, was said to be the only employee who could resolve public access computer problems and understandably Ms Rivera was not always available.

Plaintiff requested, begged, cajoled, and lobbied the Clerk and key Clerk's Office employees to fix the problems and improve public access. He also implored Cochise County IT Director Joe Casey to assist.

Since 2011, when Suarez-Dunlap took office, Plaintiff had asked the Clerk to create public access in the county's Sierra Vista facilities. In at least one communication, Suarez-Dunlap promised Plaintiff she would include the cost in an annual budget request but said she doubted that the Board of Supervisors would approve it. Plaintiff is unaware if any such request was actually made.

In 2013, the Clerk's then Business Manager, Benjamin Mostyn, had indicated that the cost of placing a public access terminal in Sierra Vista would likely be less than a $2,000 one-time cost and a few hundred dollars per year.

Though still an unprofitable endeavor, Plaintiff's readership grew steadily as he focused more on the local courts. What re-

mained of traditional local media had insufficient resources, or declined to allocate resources, to cover much court activity.- Plaintiff's publishing via e-mail, website and Facebook became the best read source of local court-related news in Cochise County.

By the years 2016-2019, Plaintiff was reviewing dozens of criminal and civil case files each month, hundreds or even thousands of pages of documents. In addition to publishing the Cochise County Record, in 2017 Plaintiff began very limited part-time (10 hours per month) employment with Courthouse News Service (CNS). His court file research work for CNS is very similar in nature to that for his own Cochise County Record. Plaintiff is assigned to review every new civil case filed in Cochise County Superior Court - typically 40-75 monthly - and obtain document copies as may be requested.

The public access service interruptions, in theory, affected "the public" generally but more specifically the handful of users who knew the computer existed and attempted to use it. As a most frequent user , Plaintiff's work in research, information-gathering and reporting on court cases was adversely affected regularly, probably more frequently than that of anyone else.

Clerk Suarez-Dunlap and her successor Clerk Hunley and their office staff employees were well aware of that.

By early-2017, the turmoil in the Clerk's Office was in clear and frustrations were high in the local court/legal community. Employee turnover of the 30 person staff was approaching 80% (annualized). Files were missing, data input errors were common. Deadlines were missed. Superior Court judges talked in open court of "problems in the Clerk's office". Judicial assistants asked Plaintiff and at least one other reporter to "do something, write an article, tell people what's going on".

Later, some of the details of more serious problems began to surface.

On April 13, 2017, Marcus Reinkensmeyer of the Arizona Supreme Court wrote (see Exhibit – Reinkensmeyer letter to Dunlap 04-13-2017) to Clerk Dunlap about recent documents submitted to the Administrative Office of the Courts that they:

> ". . identify multiple areas of concern relating to financial management and continuing non-compliance with Minimum Accounting Standards in the Clerk of Court's Office, Cochise County."

> AND noted that the Triennial Audit Report states, in part:

> "The court was still in the process of addressing findings reported on the last external review report for the period

ended on December 31, 2012. Uncorrected findings related to . . . "

Reinkensmeyer listed 14 specific areas of non-complliance.

On October 24, 2017, Cathy Clarich, Unit Caseflow Manager for the AZ Supreme Court's AOC, wrote (see Exhibit Clarich memo to Kounouho 10-24-2017) to AOC Court Operations Manager Frankie Kounouho that during a recent visit to review the Clerk's Office in Cochise County she noted that:

" . . the department should have two Court Specialists, however, both have resigned as of September 22, 2017.

AND

During our review of the systems, along with multiple conversations with the Clerk and her staff, it was apparent that many issues remain regarding the financial status of this organization.

AND

These practices could leave the office vulnerable to fraud and theft."

Clarich included a number of recommendations.

In the summer and fall of 2017, Plaintiff sought out current and former employees of the Clerk's Office and made public records requests to learn more about the situation.

In mid-2017, Plaintiff located a scathing "exit letter" sent in December 2014 by outgoing Clerk's Chief Deputy Billy Cloud which harshly criticized specific actions as well as the ethics and general management abilities of Clerk Suarez-Dunlap. Cloud left to become Sergeant at Arms at the Arizona House of Representatives.

On one occasion that year in the courthouse, Clerk Suarez-Dunlap asked to speak with Plaintiff about his inquiries, what kind of stories might be planned. She asked if she might review what Plaintiff planned to publish, to check for accuracy.

Also in 2017, Chief Deputy County Attorney (Civil Div) Britt Hanson had exasperated communications with Clerk Suarez-Dunlap about his staff's problems with access to the court's information system, complaining about Defendant Suarez-Dunlap's unwillingness to expand capacity.

In early October 2017, Cochise County IT Department Joe Casey investigated employee concerns that Clerk Suarez-Dunlap was surreptitiously accessing email accounts of employees of the Clerk's Office. The Clerk's actions were be-

1  lieved to be, in part at least, to determine who was communi-
2  cating with Plaintiff and others about problems in the Clerk's
3  Office including those regarding public access. Casey pro-
4  posed new county-level protocols to preclude the incidence of
5  such invasions and possible tampering.
6  By February 2018, the Arizona Supreme Court in coordination
7  with the Presiding Judge of the Superior Court for Cochise
8  County, James Conlogue, and the Cochise County Courts
9  Administrator, Eric Silverberg, made arrangements to bring in
10 courts operation consultant Doug Kooi to be a sort of "acting"
11 Chief Deputy to the Clerk.
12
13 Only 2-3 weeks into the arrangement, Kooi and Clerk Suarez-
14 Dunlap clashed sufficiently that Kooi asked the Presiding
15 Judge and his Supreme Court contacts, "who do you want
16 running this operation?" The Clerk was "sent home" to work
17 from there on "special assignments" (including the preparation
18 of a still undelivered operations manual).
19
20 In Kooi's December 2018 final report (Exhibit – Kooi Final Re-
21 port 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) he describes the depth and breadth, the se-
22 riousness, of the problems he discovered and worked to cor-
23 rect in the Clerk's Office. Plaintiff actively sought to learn
24 about, report on and publish about those problems.
25

1   In early January 2019, newly elected Clerk Amy Hunley took
2   office. Kooi had made suggestions to the incoming Clerk of
3   priorities and corrective measures still to be completed. Kooi's
4   contract was not extended.
5
6   In the first year of Defendant Hunley's term as Clerk, Plaintiff
7   attempted to be patient while the public access problems per-
8   sisted. Defendant Hunley had inherited some staff that was of
9   the "old school" of ill-trained employees. Plaintiff refrained
10  from complaining every time there was a public access func-
11  tionality problem.
12
13  But, in early February 2020, Plaintiff again found the Bisbee
14  office public access computer not functional and  sent an an-
15  gry e-mail (Exhibit – Morgan e-mail to Hunley about priorities
16  02-05-2020) to newish Clerk of the Superior Court Amy Hun-
17  ley, the County Administrator, the county's 3-member elected
18  Board of Supervisors and several persons in local media but
19  also copied the message to Arizona Supreme Court Public In-
20  formation Officer, attorney Aaron Nash.
21
22  Nash responded (see Exhibit – Nash e-mail to Morgan 02-05-
23  2020) saying,
24
25      "Clearly this one has pushed your buttons over time".
26

Free-lance reporter Terri Jo Neff, with years of experience in Cochise County and a frequent collaborator with Plaintiff, wrote to Nash at the Supreme Court (Exhibit – Neff e-mail to Nash 02-05-2020):

> " . . using this computer access issue as an example, there was (at least as of last week) NO WRITTEN PRO-CEDURE for clerk staff to follow when the system locked up.
>
> Aaron, this access problem has been happening the entire year that Ms. Hunley has been clerk, as she is well aware.
>
> I hope this helps you understand the frustration down here!"

**CONCLUSION**

For years Defendant Suarez-Dunlap and subsequently Defendant Hunley purposely continued long-standing local practices in the Clerk's Office of relegating access to public information, public access service interruptions and restoral of service to non-priority levels .

The State Defendants also failed and/or refused to create written procedural manuals and to provide accurate training to the

Clerk's Office's constantly changing staff in proper methods of placing and removing file access restrictions, and proper determination of need for redaction.

They knew these actions and decisions resulted in significant impediments to access to public information. Defendant Suarez-Dunlap calculated that not resolving public access problems quickly would further impair Plaintiff's work and/or drive up Plaintiff's costs. The Clerk retaliated against Plaintiff for having sought, obtained, shared and published news and information about her, the local courts, and local court cases.

The Press-Enterprise and Courthouse News Service cases established the rights to timely access to public (court) documents. But even if the Defendants were ignorant of the principles and findings of those cases, official retaliation for exercise of constitutional rights has long been known to be unlawful.

And, impairing access to public records is a criminal offense in Arizona (A.R.S. 13-2407 A4) There is no exemption for the Clerks of the Superior Courts.

The actions of the Defendants are clear violations of the well-established First Amendment right to monitor the courts. They knew or should have known. They displayed reckless disregard for the rights of the Plaintiff.

1   The Defendants are not protected by the doctrine of qualified
2   immunity which is reserved for government actors except "the
3   plainly incompetent or those who **knowingly violate the law**."
4   (emphasis added)
5
6   The State Defendants' Motion to Dismiss should be DENIED.
7
8   BUT, should the court conclude that Plaintiff's claims are not
9   well pled, Plaintiff prays the court to grant leave to file a Sec-
10  ond Amended Complaint.
11
12  RESPECTFULLY SUBMITTED this 18th day of August,
13  2020.
14

BY   /s/ David M Morgan


## CERTIFICATE OF SERVICE

I, David M Morgan, hereby certify that on August 18, 2020:

I (1) electronically transmitted this document to the Clerk's Office using the CM/ECF System for Filing , and (2) sent a copy by email to the parties listed below:

Christopher P White
Christopher.White@azag.gov
Assistant Arizona Attorney General
Attorney for "State Defendants" (Mary Ellen Suarez-Dunlap and Amy Hunley)

James M Jellison, Esq
jim@jellisonlaw.com
judy@jellisonlaw.com
Attorney for "Cochise County Defendants" (Brian McIntyre, Cochise County, Cochise County Board of Supervisors, Sara Ransom, Lori Zucco, Mark Dannels, Ken Bradshaw, Ariel Monge, Todd Borquez, Carol Capas, Pat Call, Ann English and Peggy Judd)