**WO**

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| David M Morgan,<br><br>      Plaintiff,<br><br>v.<br><br>Cochise County Board of Supervisors, et al.,<br><br>      Defendants. | No. CV-19-00571-TUC-DCB<br><br>**ORDER** |

For reasons explained below, the Court grants the Motions to Dismiss, without leave to amend.

Plaintiff filed his Complaint on December 6, 2019, (Doc. 1), and a First Amended Complaint (FAC) on March 5, 2020, (Doc. 11). Plaintiff alleges that Defendants, acting individually and together, violated his First Amendment right to free speech. He alleges that he owns and publishes the Cochise County Record, which reports on local courts, local policing and local politics. He alleges that Defendants have precluded his access to sources he needs for his journalistic endeavors and have maliciously prosecuted him by bringing a civil action against him in retaliation for his work. He alleges that the Cochise County Board of Supervisors, individually and as a government body, have knowingly looked the other way and failed to train and supervise county staff on the First Amendment right to public records. Plaintiff's FAC alleges a claim, pursuant to 42 U.S.C. § 1983, invoking this Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331, and includes pendant state law claims of intentional infliction of emotional and financial distress.

Section 1983 does not contain its own statute of limitations, so the federal courts borrow the limitation period for § 1983 claims from the statute of limitations for personal injury claims in the forum state. *See Wilson v. Garcia,* 471 U.S. 261, 279–80 (1985). In Arizona, the two-year statute of limitations for personal injury claims applies to § 1983 claims. *Marks v. Parra,* 785 F.2d 1419, 1420 (9th Cir.1986) (citing A.R.S. § 12–542)). The federal courts "borrow no more than necessary," *West v. Conrail,* 481 U.S. 35, 39–40 (1987), therefore, federal, not state, law determines when a civil rights claim accrues. *Elliott v. City of Union City,* 25 F.3d 800, 801–802 (9th Cir.1994). Under federal law, a claim accrues when the plaintiff knows or has reason to know of the injury which is the basis of the action. *Kimes v. Stone,* 84 F.3d 1121, 1128 (9th Cir.1996).

Here, the alleged constitutional violations occurred when on September 25, 2017, Defendant Lieutenant Monge, Bisbee Jail Operations Manager for the Cochise County Sheriff's Department, wrote a letter suspending Plaintiff's access to the Securus inmate video visitation system for visits with inmates at the jail in Bisbee. Thereafter, the County Defendants have acted in concert to block his access to inmate video face-to-face visitations. Next, Plaintiff alleges that on December 8, 2017, the Defendants McIntyre, Zucco, Ransom and Borquez acted in concert to file a civil action against him for allegedly violating criminal and civil statutes that protect grand jury proceedings. Defendants McIntyre, Zucco, and Ransom are Deputy County Attorneys, and Borquez was the investigating sheriff. The civil action went against Defendants, with the denial of a preliminary injunction in March of 2018, which was affirmed by the Arizona Court of Appeals on June 13, 2019. The Defendants, thereafter, dismissed the civil action. The Court assumes there are no statute of limitation issues for the purpose of determining the motions to dismiss.

Finally, the Plaintiff alleges that in December 2017 and January through February 2018, State Defendant Suarez-Dunlap, Clerk of the Superior Court for Cochise County,[1] and in 2019, Defendant Hunley, who replaced Suarez-Dunlap, failed to establish written

---

[1] These Defendants are state not county employees.

1  procedures and training for Clerk's Office staff for public access to court case files,
2  including failure to maintain a fully functional single computer available in the clerk's
3  office for public access to court records. The Court focuses on factual allegations spaning
4  2018 and 2019.

5        The Plaintiff also alleges that the Cochise County Board of Supervisors,
6  individually and acting as the Board, has failed to train and supervise these elected officials
7  (the Sheriff, the County Attorney, the Clerk of the Superior Court) and willfully allowed
8  county operations without establishing First Amendment principles and procedures
9  regarding access to public information. (FAC (Doc. 11) at ¶¶14, 27; Count X ¶ 49.)

10        Both the county and state Defendants have filed Motions to Dismiss (Docs. 32, 45).
11  Plaintiff separately responded to the Motions to Dismiss and, in responding to the State's
12  Motion to Dismiss, he alternatively moved to amend the FAC if the Court acts to dismiss
13  it. The Court treats the Motion for Leave to Amend as applying to the FAC in its entirety.
14  <u>Motions to Dismiss</u>

15        The Court grants the County Defendants' Motion to Dismiss the Plaintiff's claims
16  against Deputy Attorneys McIntyre, Zucco and Ransom as they are barred by the doctrine
17  of prosecutorial immunity. The Plaintiff's claims against the Cochise County Defendants
18  are barred by qualified immunity. Plaintiff fails to state a claim against the County Board
19  of Supervisors, individually or collectively, under *Monell v. New York City Dept of Soc.*
20  *Services,* 436 U.S. 658, 691 (1978). The Court grants the State Defendants' Motion to
21  Dismiss because actions against the State are barred by the 11th Amendment and claims
22  against the State Defendants, individually, are barred by qualified immunity. All state law
23  claims are barred by Plaintiff's failure to file a Notice of Claim as required under A.R.S. §
24  12-821.01(A).

25        Summarized by the Arizona Court of Appeals: "David Morgan is a Cochise County
26  resident who operates a website and social media discussion group dedicated to
27  electronically posting his views and articles about criminal justice topics. In September
28  2017, Morgan obtained an unredacted copy of the grand jury transcript for a murder case

the County was prosecuting against Roger Wilson. Morgan received the transcript, which contained the full names of the grand jurors, and a grand jury exhibit consisting of a photograph of the deceased victim in a hospital bed, from Wilson's defense attorney after Morgan offered to deliver the materials to Wilson at the jail where he was incarcerated awaiting trial. He also obtained a sealed motion for remand after it had been filed with the superior court." . . .   The County filed a complaint against Morgan seeking a declaration that, by posting the transcript and motion and maintaining them online, Morgan had violated a criminal statute, A.R.S. § 13-2812, two civil statutes, A.R.S. § 21-312 and § 39-121.04, and the trial court's order sealing the motion. The complaint also sought an order permanently enjoining Morgan from maintaining the materials online or otherwise publicly disseminating them." (MD, Ex. B (Doc. 32-2) at 2: *Cochise County Attorney v. Morgan*, 2019 WL 2474727 *1 (Ariz. App. June 13, 2019)).

Summarized by the Plaintiff: "In late 2017, Plaintiff published a story about claimed bungling of Cochise County grand jury proceedings in a murder case which could result in quashed indictments, delays and new proceedings. To explain the errors and the arguments by the defense attorney, Plaintiff published a link to the complete official transcript of the subject grand jury proceedings." (Response (Doc. 38) at 15.) Defendant Zucco allegedly "bungled" the grand jury presentation, *id.,* and allegedly participated in the investigation, *id.,* which in the end lead to the County Attorney's office, Deputy Attorney Ransom, initiating a civil action seeking an injunction to stop the continued publication of the grand jury transcript and juror names. *Id.*

The Plaintiff depends on the civil nature of the injunctive action filed against him by the Defendants to argue that prosecutorial immunity does not apply. But prosecutorial immunity extends to civil actions that bear a connection to criminal activity, or are functionally analogous to criminal proceedings. *See* (MD (Doc. 32) at 8 (citing *Butz v. Economou*, 438 U.S. 478, 515-16 (1978); *Torres v. Goddard*, 793 F.3d 1046, 1052 (9th Cir. 2015); *Red Zone 12 LLC v. City of Columbus*, 758 Fed. Appx. 508 (6th Cir. 2019); *Mendenhall v. Goldsmith*, 59 F.3d 685, 691 (7th Cir. 1995)).   Arizona law, likewise,

provides absolute immunity for prosecutorial functions. (MD (Doc. 32) at 8 (citing A.R.S. § 12-820.01(A)(1) & (5); *State v. Superior Court,* 921 P.2d 697, 700 (Ariz. App. 1996); *Mulligan v. Grace,* 66 P.2d 1092, 1094 (Ariz. App. 1983); *Challenge , Inc, v. Arizona,* 673 P.2d 944, 948 (Ariz. App. 1983)).

The Defendants' assertion of absolute immunity by a motion to dismiss, pursuant to Fed. R. Civ. P. 12(b)(6), requires the Court to accept as true "[a]ll allegations of material fact" alleged in the FAC (Doc. 11) and construe them "in the light most favorable to the nonmoving party." *Patterson v. Van Arsdel*, 883 F.3d 826, 829 (9th Cir. 2018) (quoting *Cousins v. Lockyer*, 568 F.3d 1063, 1067 (9th Cir. 2009)); *Iolab Corp. v. Seaboard Sur. Co.*, 15 F.3d 1500, 1504 (9th Cir.1994). The Court does not consider the merits of the Plaintiff's allegations of constitutional misconduct, but simply determines whether it appears beyond doubt that the Plaintiff can prove no set of facts in support of his constitutional claims which would entitle him to relief. *Lewis v. Tel. Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir. 1996). Dismissal is appropriate if the facts alleged do not state a claim that is "plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Requiring Plaintiff to allege facts which plausibly support (go beyond mere consistency with) his claims, reflects Rule 8's threshold requirement that the "plain statement" possess enough heft to "sho[w] that the pleader is entitled to relief." *Id*. at 1959 (citing Fed. R. Civ. P. 8(a)(2)). The purpose of Rule 8 is to prevent vague and ambiguous claims and to ensure that defendants will be able to frame a responsive pleading.

In *Twombly,* the Supreme Court raised the bar from the prior pleading requirement of "no-set-of-facts," *Conley v. Gibson*, 355 U.S. 41 (1957), which had been designed to screen out only those cases that patently had no theoretical hope of success, *id.* at 45–46. *See Ashcroft v. Iqbal*, 556 U.S. 662, 696 (2009) (Souter, J., dissenting) (observing that "[t]he sole exception" under *Conley* was for "allegations that [were] sufficiently fantastic to defy reality as we know it: claims about little green men, or the plaintiff's recent trip to Pluto, or experiences in time travel"). Under *Twombly,* a civil complaint only survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to state a claim

to relief that is plausible on its face." *Iqbal*, 556 U.S. at 677-678. In short, *Twombly* screens out the "little green men" cases and cases that, while not utterly impossible, are "implausible." A complaint must "contain sufficient factual matter" to be "plausible," *id.* at 678, but a court cannot dismiss for factual implausibility "even if it [would] strike[ ] a savvy judge that ... recovery is very remote and unlikely," *Twombly*, 550 U.S. at 556.

A. <u>Prosecutorial Immunity</u>

The scope of prosecutorial immunity is broad, *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976), with a prosecutor being absolutely immune from civil suit for any activities that are intimately associated with the judicial phase of the criminal process, such as initiating a prosecution, including grand jury proceedings, and presenting the state's case. *Imbler*, 424 U.S. at 431; *Buckley v. Fitzsimmons*, 509 U.S. 259, 273 (1993). The scope of prosecutorial immunity extends beyond the trial, to the appellate stage[2] of criminal prosecutions. *Imbler,* 424 U.S. at 427-428*; Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003). A prosecutor is equally entitled to absolute immunity when making a decision not to prosecute an individual for alleged crimes. *Ying Jing Gan v. City of New York*, 996 F.2d 522, 531 (2d Cir.1993); *Schloss v. Bouse*, 876 F.3d 287 (2d Cir.1989).

Actions by a prosecutor are not, however, covered by absolute immunity merely because they were performed by a prosecutor; the question is whether the actions "are part of a prosecutor's traditional functions." *Broam v. Bogan*, 320 F.3d at 1030. Under the Ninth Circuit's functional approach, immunity flows from "'the nature of the function performed, not the identity of the actor who performed it.'" *Kalina v. Fletcher*, 522 U.S. 118, 127 (1997) (quoting *Forrester v. White*, 484 U.S. 219, 229 (1988)). The Court distinguishes between acts of advocacy, which are entitled to absolute immunity, and administrative and "police-type" investigative acts which are not. *Patterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018). For acts that are "intimately associated with the judicial phase of the criminal process," "absolute immunity furthers the doctrine's core goal of

---

[2] In the Response to the Motion to Dismiss, the Plaintiff alleges that Defendant Ransom "appealed and lost." (Response (Doc. 38) at 16.)

preventing retaliatory lawsuits that may impose 'unique and intolerable' burdens upon prosecutors." *Id.* (quoting *Imbler*, 424 U.S. at 425–26). This goal protects even errors, such as: deciding to prosecute and evaluating a witness "even if that judgment is harsh, unfair or clouded by personal animus," *Roe v. City & County of San Francisco*, 109 F.3d 578, 583–84 (9th Cir.1997); failing to investigate the accusations against a defendant before filing charges, *O'Connor v. Nevada,* 686 F.2d 749, 750 (9th Cir.1982) (per curiam); knowing use of false testimony at trial, *Imbler,* 424 U.S. at 431, or deciding to not preserve or turn over exculpatory material before trial, during trial, or after conviction in violation of the 14th Amendment due process clause, *Imbler,* 424 U.S. at 431–32 n. 34.

For example: "Actions classified as 'advocacy' include initiating a prosecution and presenting the state's case, *Imbler*, 424 U.S. at 431, [], appearing at a probable cause hearing to support an application for a search warrant, *Burns v. Reed*, 500 U.S. 478, 491 (1991), [], and preparing and filing a motion for an arrest warrant. *Kalina*, 522 U.S. at 129, []." P*atterson v. Van Arsdel*, 883 F.3d 826, 830 (9th Cir. 2018). "Prosecutors are absolutely immune from liability for gathering additional evidence after probable cause is established or criminal proceedings have begun when they are performing a quasi-judicial function." *Broam*, 320 F.3d at 1030-31 (citing s*ee, e.g., Imbler,* 424 U.S. at 431 n. 33 (stating that "[p]reparation, both for the initiation of the criminal process and for a trial, may require the obtaining ... of evidence"); *Herb Hallman Chevrolet, Inc. v. Nash–Holmes,* 169 F.3d 636, 643 (9th Cir.1999) (when the majority of the investigation had been conducted by the time the grand jury was impaneled, the fact that the prosecutor interviewed other witnesses after impaneling grand jury did not preclude him from being protected by absolute immunity); *Freeman ex rel. The Sanctuary v. Hittle,* 708 F.2d 442, 443 (9th Cir.1983) (per curiam) (holding that the prosecutor was absolutely immune to civil suit for damages caused by the investigator while preforming an investigative function pursuant to the preparation of the prosecutor's case and within the scope of the prosecutor's duties in initiating and pursuing the state's case)).

When a prosecutor steps outside of the advocate's role, his or her conduct is protected only by qualified immunity "to the extent that any other individual would be protected performing the same function." *Cruz v. Kauai County*, 279 F.3d 1064, 1067 (9th Cir. 2002). Then, prosecutors must look to qualified immunity when they perform activities outside their core role as courtroom advocates, such as giving legal advice to police officers, *Burns*, 500 U.S. at 493, or attesting to facts in support of a search warrant, *Kalina*, 522 U.S. at 130–31.

The gravamen of Plaintiff's allegations against the prosecuting attorneys are that they acted to violate his First Amendment right to free speech by "initiating a criminal investigation of the Plaintiff and initiating criminal or civil proceedings against the Plaintiff." (FAC (Doc. 11) ¶ 31(a)), *see also* ¶¶ 27b, 29a.

The Court finds that the investigation into Plaintiff's alleged violation of the misdemeanor statute, A.R.S. § 13-2812, was criminal in nature. Prosecutorial immunity applies to any prosecutorial or judicial actions taken by the Defendant attorneys, including the ultimate decision to not bring criminal charges against the Plaintiff but to, alternatively, seek a civil injunction, which in this case had a strong connection to a criminal matter because it was filed to protect grand jury secrecy, grand jury records and victim depictions in a murder case the County was prosecuting.

The Plaintiff has failed to allege any specific facts to support his conclusory charge that the prosecuting attorneys were involved in the sheriff's investigation, but if Cochise County sheriffs can be held liable for any such conduct, so can the Defendant prosecutors. As explained below, qualified immunity applies to police investigative functions, regardless of whether the actor was a sheriff or an attorney.

### B.  Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818

(1982)). It "shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances confronted. Even if the officer's decision is constitutionally deficient, qualified immunity shields her from suit if her misapprehension about the law applicable to the circumstances was reasonable." *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004). The purpose of the doctrine is "to recognize that holding officials liable for reasonable mistakes might unnecessarily paralyze their ability to make difficult decisions in challenging situations, thus disrupting the effective performance of their public duties." *Mueller v. Auker*, 576 F.3d 979, 993 (9th Cir. 2009). Because it is inevitable that law enforcement officials will in some cases make mistakes, *Garcia v. Cty. of Merced*, 639 F.3d 1206, 1208 (9th Cir. 2011), qualified immunity "gives ample room for mistaken judgments" and protects "all but the plainly incompetent or those who knowingly violate the law." *Hunter v. Bryant*, 502 U.S. 224 (1991); *see also Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (quoting *Malley v. Briggs*, 475 U.S. 335, 341, 106 S. Ct. 1092 (1986)).

The doctrine bars the suit; it is not a defense to liability. *Act Up/Portland*, 988 F.2d at 872-73. Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Qualified immunity is a legal question, and it is addressed by the Court at the earliest possible point in the litigation. *Act Up/Portland*, 988 F.2d at 872-73. Qualified immunity protects police officers from individual liability under 42 U.S.C. § 1983 for an abuse of discretion violating civil rights unless the legal right was "clearly established" at the time, and a reasonable person in the same position would have known that what he did violated that right. *Behrens v. Pelletier*, 516 U.S. 299, 304 (1996); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996); *Trevino v. Gates*, 99 F.3d 911, 916 (9th Cir. 1996); *Act Up/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993). Qualified immunity is designed to protect an officer who, reasonably, but mistakenly, acts in violation of some constitutional right. *Saucier v. Katz*, 533 U.S. 194, 205 (2001).

When determining whether an officer is entitled to qualified immunity, the Court considers (1) whether there has been a violation of a constitutional right, and (2) whether that right was clearly established at the time of the officer's alleged misconduct. *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014). Either way, qualified immunity applies. If the question of whether there has been a constitutional violation involves disputed facts which, when viewed most favorably to the Plaintiff, could support a rational jury finding in his favor, the Court moves to the second question: whether the right at issue was clearly established such that a reasonable officer would have understood his actions were unlawful. The law does not "require a case directly on point, but existing precedent must have placed the ... constitutional question beyond debate." *Ashcroft v. al–Kidd*, 563 U.S. 731, 740 (2011). There must be precedent involving similar facts to provide an officer notice that a specific act is constitutionally unlawful. *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018) (per curium).

Here, the Court considers both prongs because it must determine whether to allow the Plaintiff, who appears pro se, to amend the First Amended Complaint. A pro se litigant should be given an opportunity to amend the compliant to overcome a deficiency unless it is clear that no amendment can cure the defect. *Potter v. McCall*, 433 F.2d 1087, 1088 (9th Cir. 1970); *Noll v. Carlson*, 809 F.2d 1446, 1448 (9th Cir. 1987). The Court has considered whether any amendment could create disputed facts which, when viewed most favorably to the Plaintiff, could support the Plaintiff on the question of immunity.

<u>The FAC and Clearly Established Law</u>

It is a cornerstone of First Amendment jurisprudence that restrictions based on the content of speech are, generally, subject to heightened judicial scrutiny, and will be struck down absent a compelling government interest. *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45 (1983) (explaining that the Court applies "the most exacting scrutiny" to content-based regulations, and that such regulations will be upheld only if "necessary to serve a compelling state interest and … narrowly drawn to achieve that end"). If content-based regulations are imposed in a public forum, such as streets,

parks and sidewalks, they are subject to strict scrutiny. *Id.* In a facility under government control, a so-called nonpublic forum, less scrutiny typically is applied. *Id.* at 46. In the prison context, the focus is on the reasonableness of prison regulations, with the relevant inquiry being whether the actions of prison officials were "'reasonably related to legitimate penological interests.'" *Thornburgh v. Abbott*, 490 U.S. 401, 409 (1989) (quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). "'[S]uch a standard is necessary if 'prison administrators ..., and not the courts, [are] to make the difficult judgments concerning institutional operations.'" *Id.* It is "beyond question" that actions "expressly aimed at protecting prison security" are legitimate because this purpose is "'central to all other correctional goals.'" *Thornburgh*, 490 U.S. at 415 (quoting *Pell v. Procunier*, 417 U.S 817, 824, 823 (1974)).

The Plaintiff alleges that Defendant Detective Borquez conducted the sheriff's investigation into whether the Plaintiff violated A.R.S. § 13-2812 because the Plaintiff posted the grand jury transcript and sealed motion on-line. The other Cochise County Sheriffs named in the FAC are: Sheriff Dannels; Detentions Commander Bradshaw; Lieutenant Monge, Bisbee Jail Operations, and Public Information Officer Capas. The factual allegations in the FAC supporting any claim against these Defendants is that Defendant Monge wrote the September 25, 2017, letter, suspending Plaintiff's access to the inmate video visitation system for face-to-face visits with inmates. (FAC (Doc. 11) at ¶¶ 10 27(a)). The suspension resulted because the Plaintiff "attempted to enter a secured area of the Cochise County Jail to visit with an inmate without authorization," in "violation of the jail's visitation policy and inmate access to media policy." (Response (Doc. 39-2) at 1: 9/25/17 letter); (Reply (Doc. 44) at 7 (quoting 9/25/17 letter)). He was told that he could appeal the denial of access to the Jail Commander, Defendant Bradshaw. *Id.* Plaintiff alleges he requested a review of Defendant Monge's suspension of Plaintiff's face-to-face communications with inmates, but received no response from Monge, Bradshaw or Dannels. (Response (Doc. 38) at 20.)

Plaintiff's Response to the County's Motion to Dismiss mirrors the factual allegations to support his claims against Borquez: "Detective Todd Borquez of the Cochise

County Sheriff's Office was the lead investigator for the underlying case." (Response (Doc. 38) at 15.) Plaintiff alleges he asked Defendant Capas, the Public Information Officer, on many occasions to explain reporting delays and missing or bogus information in daily reports, and she routinely answered with "technical difficulties" or offered other incomplete and inconsistent explanations without any supporting documentation. (Response (Doc. 38) at 19.)

Plaintiff's claims against the Clerk of the Superior Court are brought against the state because under Arizona law, a deputy clerk of the Superior Court of Arizona is an employee of the State of Arizona; each deputy clerk is appointed by the Clerk of the Superior Court of Arizona and is a part of the state's judicial branch of government. *Salerno v. Espinoza*, 210 Ariz. 586, 588, 115 P.3d 626, 628 (Ariz. App. 2005). Plaintiff claims that State Defendants Suarez-Dunlap and Hunley, acting individually and officially, failed to establish written procedures and training for Clerk's Office staff for public access to court case files and, thereby, impeded his First Amendment right of public access to court records.

In his Response to the State Defendants' Motion to Dismiss, the Plaintiff lays out his case going back to 2011, when Suarez-Dunlap took office, and he asked her to create public access to court records at the county's Sierra Vista facility rather than Bisbee, where the county seat,  courthouse, and clerk's office is located. (Response (Doc. 49) at 8.) Until 2017, the single "public access" computer was behind a locked door inside the Clerk's office and worked "perhaps 75% of the time." *Id.* at 6. It was located in Bisbee, not Sierra Vista, which is the largest city in Cochise County, where he lives. *Id.* Off-premise public access (via internet) to Cochise County Superior Court case file documents was not available until mid-2019 when the Arizona Supreme Court's Administrative Office [] began providing limited on-line access to limited case-file documents from most Superior Courts in Arizona." *Id.* at 7. By 2016-17, he "was reviewing dozens of criminal and civil case files each month, hundreds or even thousands of pages of documents." *Id.* at 9. He alleges that he "was by far the most frequent user of the public access computer." *Id.* at 7.

"By early-2017, the turmoil in the Clerk's Office was in (sic) clear and frustrations were high in the local court/legal community." *Id.* at 10. "By February 2018, the Arizona Supreme Court in coordination with the Presiding Judge of the Superior Court for Cochise County, James Conlogue, . . . made arrangements to bring in court operation consultant Doug Kooi to be a sort of 'acting' Chief Deputy to the Clerk." *Id.* at 13.) "In early January 2019, newly elected Clerk Amy Hunley took office. Kooi had made suggestions to the incoming Clerk of priorities and corrective measures still to be completed." *Id.* at 14.

Because of the two-year statute of limitation period that applies to Plaintiff's claims, the Court focuses on the factual allegations for 2018 and 2019. The Plaintiff attaches the log-in sheets for what he refers to as the public access computer, which he alleges routinely was inoperable. The sign-in sheets for 2019 reflect the following use by the Plaintiff of the public access computer: Page 1: 19 sign-ins by Plaintiff with two identified as "system down"; Page 8: 24 sign-ins by Plaintiff without any problem; Page 13: 1 sign-in, without any problem. The sign-in sheets for 2018 reflect he used the public access computer as follows: Page 2: 24 sign-ins, with 4 "not functioning" and 3 spanning consecutive days from April 5 to 8; Page 3: 6 sign-ins, with 2 "not functioning"; Page 4: 26 sign-ins, with no problems; Page 5: 4 sign-ins, with no problems; Page 6: 21 sign-ins with no problems; Page 7: 21 sign-ins with 5 "not working" and 2 spanning consecutive days from December 11 to 21. (Response (Doc. 49-2)).

Summarized by the Plaintiff: "For years Defendant Suarez and Hunley purposely continued long-standing local practices . . .  relegating access to public information, public access service interruptions and restoral of service to non-priority levels." *Id.* at 15. Most telling is Plaintiff's allegation: "At $4 per document, the newish state-run system rate for on-line access to those court case file documents evidently tries to approximate the 50 cents per page that the Arizona legislature authorizes- and requires (A.R.S. § 12-284)- the Clerks of the Superior Court to charge for printing and providing copies. Plaintiff could avoid significant costs, hundreds of dollars a month, and review many more cases and document

1   when access to view and read documents was available via the public access computer."
2   *Id.* at 7.

3       Importantly, the Court finds that the Plaintiff's First Amendment claim is directed
4   at the free "public access computer," not access, generally, which existed either through
5   the state-run on-line service for $4 per document or by hard copy at 50 cents a page.

6                                    Conclusion

7       Plaintiff offers no facts in his FAC or Responses to the Defendants' Motions to
8   Dismiss to support his claims that his First Amendment right to free speech, i.e.,
9   journalistic freedom,[3] was violated or that the Defendants retaliated against him because
10  of his journalistic free-speech endeavors. His allegations of fact reflect only that he
11  routinely exercised his First Amendment right to journalistically attack the Defendants.

12      Plaintiff's FAC and Response alleges nothing more than the fact of the criminal
13  investigation into his admitted publication of the grand jury murder-case transcript. His
14  assertion that the criminal investigation was retaliatory fails because the express provisions
15  of A.R.S. § 13-2812 make it a criminal misdemeanor to unlawfully commit a grand jury
16  disclosure: "if the person knowingly discloses to another the nature and substance of the
17  testimony." It does not matter that in the end, the preliminary injunction was denied
18  because the court found the statute might be successfully attacked by the Plaintiff as overly
19  broad, and the transcript had been so widely disseminated that claw-back was pointless.
20  (Response (Doc. 43-2) at 16-22.) The Defendants based the criminal investigation on
21  admitted conduct that met the express elements of the misdemeanor statute. There is no
22  clearly established law which would have led a reasonable police officer to understand that
23  conducting the investigation under such circumstances violated the First Amendment to
24  the Constitution.  The Court finds that qualified immunity bars the claims against the
25  investigating officers, including Defendant Borquez or any prosecutor acting as his
26  functional equivalent.

27  _____
    [3] "Congress shall make no law respecting an establishment of religion or prohibiting the
28  free exercise thereof; or abridging the freedom of speech, <u>or of the press</u>; or the right of the
    people peaceably to assemble, and to petition the government for a redress of grievances."
    (Emphasis added).

1    The Court turns to the claims against Defendants based on the letter written by
2    Defendant Monge, suspending face-to-face inmate visitation because the Plaintiff violated
3    jail policy by entering a secured area without authorization. There is no constitutional right
4    to face-to-face visits with prisoners. As long as there is an alternative means of
5    communication, restricting face-to-face media interviews with inmates does not violate
6    inmate or media First Amendment rights. *Pell*, 417 U.S at 824, 828, 835. "(N)ewsmen have
7    no constitutional right of access to prisons or their inmates beyond that afforded the general
8    public." *Id.* at 834; *see also Saxbe v. Washington Post Co*., 417 U.S. 843, 849-50 (quoting
9    *Procunier*, 417 U.S at 835) (finding policy precluding face-to-face visits with prisoners,
10   except for clergy, family, and legal counsel, did "'not deny the press access to sources of
11   information available to members of the general public.'" "Th[e] Court has never intimated
12   a First Amendment guarantee of a right of access to all sources of information within
13   government control." *Houchins v. KQED, Inc.*, 438 U.S. 1, 9 (1978) (plurality opinion).
14   "The First and Fourteenth Amendments do not guarantee the public a right of access to
15   information generated or controlled by government, nor do they guarantee the press any
16   basic right of access superior to that of the public generally." *Id.* at 16 (Stewart, J.,
17   concurring in judgment).

18    As alleged by the Plaintiff, the Defendants acted pursuant to neutral policies for
19   security reasons. Plaintiff has no right superior to that of the general public to visit with
20   inmates, including complying with prison security policies. Plaintiff retains the ability to
21   communicate with inmates through any alternative means besides face-to-face video or in-
22   person visits. The Court finds that there was no right clearly established by law such that a
23   reasonable officer in Defendant Monge's position would have understood it was unlawful
24   under the First Amendment to suspend Plaintiff's visitation privileges due to the security
25   violation, especially since the suspension allowed for alternative means of communication
26   with inmates.

27    Other than the impropriety of the suspension under the First Amendment, the
28   Plaintiff offers no other theory of liability for Defendants' failure to respond to Plaintiff's

1   inquiries related to it. The Court finds no clearly establish law such that a reasonable person
2   would have known failing to respond to Plaintiff's inquiries regarding the suspension of
3   visitation rights violated the First Amendment.

4       Qualified immunity applies to bar the Plaintiff's claims against the Cochise County
5   Defendants Monge, Dannels, and Bradshaw.

6       Likewise, there is no clearly established case law which would have led the County
7   Public Information Officer, Defendant Capas, to believe the Plaintiff had a First
8   Amendment right to prison records. The law is to the contrary. *See In re Boston Herald,*
9   *Inc.,* 221 F.3d 174, (3rd Cir. 2003) (finding full scope of the constitutional right of access
10  is not settled in law, reviewing litany of cases, concluding cases demonstrate the First
11  Amendment does not grant the press or the public an automatic constitutional right of
12  access to every document connected to judicial activity, and finding no First Amendment
13  right to prisoner's CJA financial documents); The law is the same, even if Plaintiff sought
14  general arrestee information from Defendant Capas. *See*, *Los Angeles Police Dep't v.*
15  *United Reporting Pub. Corp.*, 528 U.S. 32, 32 (1999) (citing *Houchins v. KQED, Inc*., 438
16  U.S. at 14) (finding California could decide not to give out arrestee information at all
17  without violating the First Amendment). No reasonable officer in Defendant Capas'
18  position would have understood it was unlawful to not provide daily reports due to
19  "technical difficulties."

20      The conspiracy claims fall with the constitutional claims. Likewise, the *Monell*
21  claims fail. Additionally, the Plaintiff fails to allege a *Monell* claim.  "A municipal entity
22  may be held liable only if the alleged wrongdoing was committed pursuant to a municipal
23  policy, custom or usage." (MD (Doc. 32) at 11 (citing *Bd. of County Comm'rs of Bryan*
24  *County, Oklahoma v. Brown,*  520 U.S. 397, 402-04 (1997); *Monell v. New York City Dept*
25  *of Soc. Serv.,* 436 U.S. 658, 691 (1978)). There is no *respondeat superior* liability between
26  the County Board of Supervisors and the Sheriff, County Attorney, or Clerk's office
27  employees. (MD (Doc. 32) at 11-13.)

28

In pressing claims against the State Defendants, the Cochise County Clerks, the Plaintiff relies on *Press-Enterprise Co. v. Superior Court of California for Riverside*, 478 U.S. 1 (1986) and *Courthouse News Service v. Planet*, 947 F.3d 581 (2020), applying *Press-Enterprise Co*., which recognized a presumptive First Amendment right of access to judicial proceedings and documents to the press, and expanded it to civil judicial proceedings and documents. *Courthouse News,* 947 F.3d at 590-591. On January 1, 2020, the Ninth Circuit considered the issue raised by the Plaintiff, as a matter of first impression, recognized that the Supreme Court had not determined the issue, followed all the other circuits having considered the question, and held that First Amendment free-press rights apply to both civil and criminal proceedings. *Id.* "To determine whether a First Amendment right of access attaches to a type of judicial proceeding or record, we consider (1) whether that proceeding or record 'ha[s] historically been open to the press and general public' and (2) 'whether public access plays a significant positive role in the functioning of the particular [governmental] process in question.'" *Courthouse News*, 947 F.3d at 590 (quoting *Press-Enterprise II*, 478 U.S. at 8) "A presumptive First Amendment right of access arises if a proceeding or record satisfies both requirements of the two-part test." *Courthouse News*, 947 F.3d at 590.

As of January 20, 2020, under the clearly established law in the Ninth Circuit, there is "a qualified right of timely access to newly filed civil nonconfidential complaints that attaches when the complaint is filed. However, this right does not entitle the press to immediate access to those complaints. Some reasonable restrictions resembling time, place, and manner regulations that result in incidental delays in access are constitutionally permitted where they are content-neutral, narrowly tailored and necessary to preserve the court's important interest in the fair and orderly administration of justice." *Courthouse News Service,* 947 F.3d at 585. *Courthouse News* does not aid the Plaintiff because qualified immunity considers the "clearly established" law at the time the Defendants allegedly violated the Constitution.  *See supra above* (citing *Behrens v. Pelletier*, 516 U.S. 299, 304 (1996); *Collins v. Jordan*, 110 F.3d 1363, 1369 (9th Cir. 1996); *Trevino v. Gates*,

99 F.3d 911, 916 (9th Cir. 1996); *Act Up/Portland v. Bagley*, 988 F.2d 868, 871 (9th Cir. 1993)).

Even if *Courthouse News* had issued sooner, it does not help the Plaintiff. He alleges claims against the State Defendants, the Cochise County Clerks, Defendants Suarez-Dunlap and Hunley, that they "restricted" his access to review certain court case files because they failed to establish written procedures and training for clerk's office staff for accessing public court case records, and the one public access computer in the clerk's office was frequently not working. First, there is no constitutional entitlement to written procedures and training. There is only liability for constitutional violations which caused by a lack of procedures and training for staff.

Plaintiff "protests too much" and defeats his case by complaining that hard-copy records or records obtained through the state's electronic system is too costly as compared to the free-access public computer. In *Courthouse News,* the defendants had procedures in place that precluded the newspaper reporters from accessing the hard-copy documents until docketing was completed, with delays in docketing stretching over several days. Admittedly, the Plaintiff has public access to the documents he seeks. It is just too slow, too costly, or requires an inconvenient drive from Sierra Vista to Bisbee. At the time, there was no clearly established law that would have led the Clerks of the Cochise County Court to know free public records are a constitutional right because there is no such constitutional requirement.   Qualified immunity bars this claim against the State Defendants, acting individually.

The conspiracy claims fall with the constitutional claims. For all the reasons explained by the State Defendants, the Eleventh Amendment to the United States Constitution precludes the Plaintiff from suing the State Defendants in their official capacities. (MD (Doc. 45) at 8.)

Plaintiff does not dispute that the state law claims are barred by his failure to comply with state Notice of Claim provisions, A.R.S. 12-821.01. (MD (Doc. 32) at 14-15); (MD (Doc. 45) at 7-8).

1   The Court does not reach the Defendants' Rule 8 assertions that Plaintiff failed to
2   state facts as against specific Defendants, sufficiently, so that each Defendant may respond
3   to the charges made against her or him. This deficiency may be cured by amendment to
4   state specific allegations against specific Defendants and identify who participated in
5   which alleged activities and state what injury, if any, Plaintiff suffered as a result of the
6   activities of each Defendant. Such an amendment would, however, not cure the defects of
7   law found in the FAC. To the extent the Court has found that the Plaintiff fails to state a
8   constitutional claim, the case must be dismissed. The federal courts are courts of limited
9   jurisdiction and may only adjudicate those cases over which they have subject matter
10  jurisdiction. Where there is no constitutional violation of an individuals' rights, this Court
11  has no jurisdiction. *Kikkonen v. Guardian Life Insur. Co. of America,* 511 U.S. 375 (1994).
12  The case must also be dismissed under *Twombly* because the Plaintiff's FAC does not
13  "contain sufficient factual matter" to be "plausible." Plaintiff does not provide grounds for
14  his "entitlement to relief," and the Court finds that no amendment can avoid prosecutorial
15  immunity, qualified immunity, and the Eleventh Amendment.

16       **Accordingly,**

17       **IT IS ORDERED** that the County Defendants' Motion to Dismiss (Doc. 32) is
18  GRANTED.

19       **IT IS FURTHER ORDERED** that the State Defendants' Motion to Dismiss (Doc.
20  45) is GRANTED.

21       **IT IS FURTHER ORDERED** that the Plaintiff's Motion to Amend (Doc. 49) is
22  DENIED.

23       **IT IS FURTHER ORDERED** that the Clerk of the Court shall enter Judgment for
24  Defendants.

25       Dated this 16th day of September, 2020.

26
27
28
                                                    David C. Bury
                                           United States District Judge

- 19 -